OFFICE OF THE ATTORNEY GENERAL OF TEXAS
AUSTIN



GERALD C. MANN
ATTORNEY GENERAL

Honorable Luther C. Johnston
County Attorney
Anderson County
Palestine, Texas

Dear Sir:

Opinion No. O-2343
Re: Necessity of fishing license
for stockholders (and guests)
of corporation owning artifi-
cial lake.

    This is in reply to your letter of May 9, 1940, re-
questing the opinion of this department upon the above stated
matter. In this connection, the following facts are given:

> "This lake is an artificial lake, formed by
> a dam, built about 1895 by a corporation organized
> for recreational purposes under the laws of the
> state of Texas, (the majority of stockholders being
> residents of the county within which the lake is
> situated). The waters of the lake are entirely on
> land owned solely by the corporation and are derived
> mainly from springs on the corporation property. A
> small portion of the waters however are surface
> waters draining thru a marsh from the lands of an-
> other but not of sufficient quantity to constitute
> a watercourse nor to provide livelihood or breeding
> grounds for fish. Waste water from the lake is al-
> lowed to flow thru an artificial wasteway, across
> which an iron netting has been continuously main-
> tained, some distance into a creek, non-navigable
> both in fact and in law, and thence several miles
> into the Neches River. The lake is not subject to
> overflow from any public water; has no connection
> therewith except thru the wasteway; the topography,
> the small amount of water in the wasteway, and the
> iron net combining to render the wasteway no common
> passageway for fish to or from breeding or feeding
> grounds."

    On the basis of these facts, your questions are as
follows:

Honorable Luther C. Johnston, Page 2

"1. May a stockholder of the corporation own-
ing this lake fish therein without an artificial
bait license?

"2. May a stockholder who resides (a) in a
county other than that in which the lake lies or
(b) outside the State of Texas or (c) outside the
United States of America fish therein without a
non-resident license?

"3. Do guests or licensees of stockholders
have immunities from regulation equal to those of
stockholders?

"4. Do artificial lakes not subject to over-
flow constitute 'waters of this state' as such term
is used in Art. 4032 (a) of the Revised Statutes?"

Section 1 of Article 4032a, Vernon's Annotated Civil
Statutes, reads:

"Sec. 1. No person who is a non-resident
of Texas, or who is an alien, shall fish in the
waters of this state without first having pro-
cured from the Game, Fish and Oyster Commission
of Texas, or a Deputy Game Warden thereof, or
from a County Clerk in Texas, or other legally
authorized agent, a license to fish; and no per-
son who is a resident of this State shall fish
with artificial lures of any kind in the waters
of this State without first having procured from
the Game, Fish and Oyster Commission, or a Deputy
thereof, or from a County Clerk in Texas, or other
legally authorized agent, a license to fish."

Fish, because of their migratory characteristics,
are classified as animals ferae naturae. While they are at
freedom, their ownership is in the State for the benefit of
all of its inhabitants. 11 R. C. L. 1015. Of course, property
in fish when confined is in the owner of the land covered by
the water in which they are found. Fish and Feather Club vs.
Thomas (C.C.A. 1911), 138 S. W. 150. Title being in the sov-
ereign (prior to captivity), it is well established that it has
power and authority to enact laws for their conservation and
propagation. Sterrett vs. Gibson (C.C.A. 1914), 168 S. W. 16;
Yoon vs. Miller (C.C.A. 1921), 234 S. W. 573; Taylor Fishing
Club vs. Hamnett (C.C.A. 1935), 88 S. W. (2d) 127, writ dis-
missed; 11 R. C. L. 1041.

Bearing in mind the proposition that the basis of

Honorable Luther C. Johnston, Page 3

the State's power of regulation is the incident of ownership
in the people as a whole in their sovereign capacity, the
question for the determination is the extent of this power of
control. Does it extend to private bodies of water having no
connection with public waters? Has the State attempted to ex-
ercise control over such waters and the fish therein?

In People vs. Truckee Lumber Company, 116 Cal. 397,
48 Pac. 374, 39 L. R. A. 581, 58 Am. St. Rep. 193, it is
stated that:

"The dominion of the State for the purpose
of protecting its sovereign rights in the fish
within its waters, and their preservation for the
common enjoyment of its citizens,....extends to
all waters within the state, public or private,
wherein these animals are habited or accustomed
to resort where spawning or other purposes, and
through which they have freedom of passage to and
from the public fishing grounds of the state. To
the extent that waters are the common passageway
for fish, although flowing over lands entirely
subject to private ownership, they are deemed for
such purposes public waters, and subject to all
laws of the state regulating the right of fishery
...." (Underscoring ours.)

In State vs. Roberts, 59 N. H. 256, 47 Am. Rep. 199,
the Court said:

"But while the legislature has power to reg-
ulate and limit the time and manner of taking fish
in waters which are public breeding places or
passage ways for fish, it has not assumed to inter-
fere with the privileges of the owners of private
ponds having no communication through which fish
are accustomed to pass to other waters. Such ponds,
whether natural or artificial, are regarded as pri-
vate property, and the owners may take fish there-
from whenever they choose, without restraint from
any legislative enactment, since the exercise of
this right in no way interferes with the rights of
others...."

See also Corpus Juris, 624.

Consequently, it may be seen that some doubt has
been expressed as to the power of the state to control and
regulate fishing in purely private waters having no connec-
tion with any public waters. Did the Texas Legislature

Honorable Luther C. Johnston, Page 4

intend to include such waters within the scope of Article 4032a when it made it necessary under certain circumstances to have a fishing license for the purpose of fishing "in any of the waters of this State"? We believe not.

In People vs. Miles, 143 Cal. 636, 77 Pac. 666, it was held that the phrase "waters of the state" meant "waters coming within the regulating power of the state concerning the fish therein."

In Milton et al. vs. State (Sup. Ct. Ark. 1920), 221 S. W. 461, appellant was charged with the offense of unlawful fishing under a statute which prohibited certain acts "in any of the waters of this State." Under the facts the prohibited acts were done in a privately owned inland lake having no connection with other waters, and the court said:

"The purpose of the statute was to protect and preserve fish in the public waters or such privately owned waters as were connected with other streams or bodies of water, and not to a private pond or lake wholly on the premises of an owner or common owners, which is not connected in any way with another stream or body of water. The former statute of this state regulating the taking of fish (Kirby's Digest, Sec. 3600) contained an express provision exempting from the application of the statute waters 'wholly on the premises belonging to such person or persons using such device or devices.' This provision was omitted from the statute now in force, but, as before stated, we think that the term 'in any of the waters of this state,' when considered in the light of the obvious design of the statute, excludes privately owned waters having no connection with other streams."

In Territory of Hawaii vs. Hoy Chong, 21 Hawaii 39, Ann. Cas. 1915a, 1155, the court said:

"A pond which has neither outlet or inlet through which fish can pass is the private property of its owner; the public has no interest in it, and a statute prohibiting certain methods of taking fish does not apply to such a pond."

In People vs. Conrad, 125 Mich. 1, 83 N. W. 1012, defendant Conrad and others owned a lake having no inlet or outlet with other waters. Defendants had obtained permission from the owner to spear fish in such lakes for which they

were arrested under a statute making it unlawful to spear
fish "in any of the inland lakes in this State." The court
said:

> "This lake is private property. Its owners
> have entire control over it and the right to fish
> in it. The public have no interest in it. If it
> were connected with other lakes and streams, so
> that fish might pass in and out of it, others than
> the owners would then have an interest in the pro-
> tection of the fish in the lake. The act cannot
> be construed to include private ponds and lakes,
> in which the public have no interest."

See also Venning vs. Steadman, 9 Can. Sup. Ct. 206,
in which the court held that an act of the Canadian Parliament
should not be construed to require licenses for fishing on
private property, "unless the power is given in clear and un-
equivocal language or irresistible inference."

In Taylor Fishing Club vs. Hammett (C.C. A. 1935), 88
S. W. (2d) 127, writ dismissed, the court defined the limits
of the state's regulatory power in the following language:

> "We recognize as sound the proposition as-
> serted by appellee that all fish in lakes (pub-
> lic or private) subject to overflow from rivers
> or other streams within the borders of this state
> are property of the people of this State and that
> the State has the right to regulate the taking
> thereof."

In Jones vs. State (Ct. Cr. App. 1931), 45 S. W. (2d)
612, appellant was tried and convicted of the offense of un-
lawfully taking, catching and having in his possession a bass
fish less than eleven inches in length. Under the facts as they
developed, the fish was caught in a private tank and appellant
had permission of the owner of the tank to fish therein and keep
the fish that he caught therefrom. The tank had been constructed
by building a dam across a small ravine and filled with surface
water only, which surface water did not come from any rivers
or other streams or from any public water course of the state.
The court cited with approval the case of State vs. Roberts,
59 N. H. 256, 47 Am. Rep. 199, and the quotation from 26 Cor-
pus Juris at page 624 providing,

> "But the legislature cannot interfere with
> the fishing privileges of the owners of private
> ponds having no communication through which fish

Honorable Luther C. Johnston, Page 6

are accustomed to pass to other waters."

The court also emphasized the following portion of Article 951 of the Penal Code:

"This article shall not apply to any artificial lake, pond or pool owned by any person, firm, corporation, city or town, that does not have as its source of water supply a river or creek or is not subject to overflow from a river or creek."

and held that this provision constitutes an exception to the game laws which must be construed together. The court said:

"Articles 931 and 933, upon which the prosecution is founded, and Article 951, just quoted, are all parts of the Game Law and must be construed together. When so construed, the exception in Article 951 italicised above, apparently would operate to protect the appellant against a conviction in the present instant. Article 951 apparently legalizes the catching of fish of all kinds in private waters. The appellant, having legally caught the fish described in the evidence in private waters, in which the state had no interest, could not be guilty of an offense by having the fish in his possession." (Underscoring ours.)

On motion for rehearing, the court added:

"In addition to Article 951, Penal Code, 1925, referred to in our original opinion as indicating that it had not been the purpose of the legislature to attempt interference with the owners' privilege to take fish from privately owned ponds, we advert to article 924-925, Penal Code (1925). The first of said articles makes it an offense to catch or take fish in any of the 'salt or fresh waters, lakes or streams in the state' by poisons or any explosives, or by the use of drugs. The very next article (925) says a party who takes fish by poison or by the use of any explosive, etc., in any 'lake, pool or pond', without the consent of the owner of such lake, pool, or pond, shall be guilty of an offense. The article concludes with these words: 'In prosecutions hereunder, the burden to prove such consent shall be upon the defendant.'

Honorable Luther C. Johnston, Page 7

"It seems to the writer that in no clearer language than that found in Articles 925 and 951 could it be expressed that it was not the legislative intent to place restriction on the owners' control over fishing in privately owned ponds, as distinguished from fresh waters, streams, and lakes as defined in Article 926 in the Penal Code." (Underscoring ours.)

From the facts submitted, we understand that the lake in question is an artificial one entirely situated on and surrounded by lands owned by the corporation; that the lake is not subject to overflow from any public body of water, river or stream, and has no connection with public waters except through an artificial wasteway across which an iron netting has been continuously maintained.

On the basis of these facts, it is the opinion of this department, and you are respectfully advised, that the lake in question does not constitute a part of the "waters of this state" as that term is used in Article 4032a, Vernon's Annotated Civil Statutes, requiring licenses for non-residents and residents fishing with artificial lure in the "waters of this state."

It is the further opinion of this department, that a resident or non-resident stockholder of such corporation and his resident or non-resident, citizen or alien, guest may fish in the waters of such lake without complying with the provisions of Article 4032a, Vernon's Annotated Civil Statutes.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By _Benjamin Woodall_

Benjamin Woodall
Assistant

APPROVED MAY 20, 1940

_Gerald C. Mann_

ATTORNEY GENERAL OF TEXAS

By _James D. Smullen_

James D. Smullen

APPROVED
OPINION
COMMITTEE
BY_____
CHAIRMAN

JDS/os